J-S43030-20

2021 PA Super 44

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
                                 :
               v.                :
                                 :
                                 :
                                 :
ROBERT LOUIS WENZEL              :
                                 :
          Appellant              :     No. 417 WDA 2020

Appeal from the Judgment of Sentence Entered November 1, 2019
In the Court of Common Pleas of Warren County Criminal Division at
            No(s):  CP-62-CR-0000550-2018


BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

OPINION BY SHOGAN, J.:                    **FILED: MARCH 17, 2021**

Appellant, Robert Louis Wenzel, appeals from the judgment of sentence

entered on November 1, 2019, in the Warren County Court of Common Pleas.

We affirm.

The trial court summarized the factual background of this matter as

follows:

> The Commonwealth charged Appellant at Criminal
> Information CR 550 of 2018 with (1) count of Resisting Arrest or
> Other Law Enforcement Officer,[1] following an incident that
> occurred on October 4, 2018.  On that date, members of the
> Pennsylvania State Police served an arrest warrant upon the
> Appellant.  The complaint alleged that the Appellant refused to
> comply with the officer's orders and he created a substantial risk
> of bodily injury to the officers.  Thus, the State Police were forced
> to employ substantial force to overcome the resistance.
> Ultimately, a jury convicted the Appellant of Resisting Arrest or
> Other Law Enforcement on September 5, 2019.
>
> [1] 18 Pa.C.S.A. § 5104, graded as a Second Degree
> Misdemeanor.

Following trial, on September 20, 2019, Appellant filed a motion for contempt against Corporal Jen Bovee for failure to appear. The [c]ourt denied the motion for contempt on October 2, 2019, because the Appellant could not produce proof of service. On November 1, 2019, the [c]ourt sentenced the Appellant to Intermediate Punishment, for a period of two (2) years less one (1) day, with a restrictive portion of four (4) months [of] incarceration in the Warren County Prison, with credit for time served of one hundred nineteen (119) days, followed by one (1) month of House Arrest.

The Appellant filed a motion for post-sentence relief on November 12, 2019. In response to that motion, the [c]ourt filed a scheduling order on December 31, 2019 that ordered an evidentiary hearing to take place on February 6, 2020 to address the issue of whether the Commonwealth violated the discovery standards set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose that a Pennsylvania State Police internal investigation took place in this matter. On February 14, 2020, this [c]ourt denied Appellant's motion for post-sentence relief and published a thorough opinion explaining its ruling. On March 10, 2020, [Appellant] appealed the order entered on February 14, 2020. On March 17, 2020, this [c]ourt ordered the Appellant to file and serve on the trial court a concise statement of the errors complained of on appeal within twenty-one days, in accordance with Rule 1925(b). The Appellant filed a timely statement of matters complained of on appeal on April 6, 2020. …

Trial Court Opinion, 5/1/20, at 2-3. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Before we address Appellant's issues on appeal, we must address whether this appeal is properly before us. As noted, the trial court sentenced Appellant on November 1, 2019. That sentencing order provided:

SENTENCE

AND NOW, this 1st day of November 2019, as to Count 1, resisting Arrest or Other Law Enforcement, the Defendant is sentenced to an alternative sentence as follows:

a.) Defendant shall serve a period of Intermediate Punishment for two (2) years less one (1) day, with a restrictive portion of four (4) months incarceration in the Warren County Prison, with credit for time served of one-hundred nineteen (119) days, followed by one (1) month of House Arrest. The balance of the Intermediate Punishment period shall be general supervision by the Warren County Probation Department. This sentence shall run concurrently with the McKean County sentence Defendant is currently serving.

b.) Defendant shall pay the cost of prosecution, an administrative fee of $125 to the Warren County Probation Department, a fine of $350 and central booking costs of $125.

This sentence commences this date.

Pursuant to Local Rule 705, Defendant shall abide by all rules and conditions of Intermediate Punishment.

The presentence investigation report is made part of the record.

BY THE COURT:
s/Maureen A. Skerda, P.J.

Judgment of Sentence, 11/1/19, at 1-2.

Appellant filed a timely post-sentence motion on November 12, 2019.[1]

On November 19, 2019, while Appellant's post-sentence motion was pending,

---

[1] Post-sentence motions must be filed no later than ten days from the imposition of sentence. Pa.R.Crim.P. 720(A)(1). Herein, the tenth day following the imposition of sentence was Monday, November 11, 2019, which was Veterans Day. Therefore, Appellant's post-sentence motion that was filed on November 12, 2019, was timely. *See* 1 Pa.C.S. § 1908 (for computations of time, if the last day of any such period shall fall on Saturday, Sunday, or a on a legal holiday, such day shall be omitted from the computation); ***Commonwealth v. Green***, 862 A.2d 613, 618 (Pa. Super. 2004).

the trial court amended Appellant's November 1, 2019 judgment of sentence *sua sponte*.[2]   First Amended Judgment of Sentence, 11/19/19.   In the amended judgment of sentence, the trial court removed 119 days of credit for time served.  ***Id.*** at 1.  On December 12, 2019, the trial court again amended Appellant's judgment of sentence *sua sponte* and stated Appellant was required to spend ninety days of the four-month restrictive portion of his sentence in the Warren County Prison, and house arrest would be enforced by electronic monitoring.  Second Amended Judgment of Sentence, 12/12/19.

On February 14, 2020, following an evidentiary hearing, the trial court denied Appellant's post-sentence motion.  On March 10, 2020, Appellant filed an appeal in which he purported to appeal from the February 14, 2020 order denying his post-sentence motion.  This Court has held that in cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to Section 5505, the direct appeal lies from the **amended** judgment of sentence.  ***Commonwealth v. Garzone***, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010) (emphasis added).  However, even though Appellant filed an appeal from the order denying his post-sentence motion,

---

[2]  "[A] court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."  42 Pa.C.S. § 5505.   Because the amendment occurred within thirty days of the November 1, 2019 judgment of sentence, and as no appeal had been filed, the trial court had the authority to amend Appellant's November 1, 2019 judgment of sentence.

and despite the trial court filing amendments to the November 1, 2019 judgment of sentence, we conclude that under the circumstances presented herein, we are not precluded from addressing the merits of Appellant's appeal. Our rationale is set forth in detail below.

As noted, Appellant filed a timely post-sentence motion on November 12, 2019, following the imposition of sentence on November 1, 2019. The post-sentence motion tolled the thirty-day appeal period. **See Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015) (explaining that in a criminal case, where a defendant files a timely post-sentence motion, the period in which to file a direct appeal is tolled and does not begin to run until the trial court decides the motion) (citing Pa.R.Crim.P. 720(A)(2); Pa.R.A.P. 903(a) (stating that "[e]xcept as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.")). Although the trial court had the authority to file the intervening First Amended Judgment of Sentence and Second Amended Judgment of Sentence,[3] we conclude that the amended sentences had no negative impact on Appellant's timely post-sentence motion or appeal.

_____

[3] As stated above, the trial court had the authority to amend the November 1, 2019 judgment of sentence on November 19, 2019 pursuant to 42 Pa.C.S. § 5505. Similarly, we conclude that because the trial court had the authority to file the First Amended Judgment of Sentence on November 19, 2019, it retained the authority to modify that amended judgment of sentence for thirty

The First Amended Judgment of Sentence was nearly identical to the original November 1, 2019 judgment of sentence and provided as follows:

AMENDED
SENTENCE

AND NOW, this 1st day of November 2019, as to Count 1, resisting Arrest or Other Law Enforcement, the Defendant is sentenced to an alternative sentence as follows:

   a.) Defendant shall serve a period of Intermediate Punishment for two (2) years less one (1) day, with a restrictive portion of four (4) months incarceration in the Warren County Prison, followed by one (1) month of House Arrest. The balance of the Intermediate Punishment period shall be general supervision by the Warren County Probation Department. This sentence shall run concurrently with the McKean County sentence Defendant is currently serving.

   b.) Defendant shall pay the cost of prosecution, an administrative fee of $125 to the Warren County Probation Department, a fine of $350 and central booking costs of $125.

This sentence commences this date.

Pursuant to Local Rule 705, Defendant shall abide by all rules and conditions of Intermediate Punishment.

The presentence investigation report is made part of the record.

BY THE COURT:
s/Maureen A. Skerda, P.J.

First Amended Judgment of Sentence, 11/19/19, at 1-2.

---

days. *Id.* Thus, the trial court had the authority file the Second Amended Judgment of Sentence on December 12, 2019. *Id.*

Similarly, the Second Amended Judgment of Sentence entered on December 12, 2019, was almost identical to the original November 1, 2019 judgment of sentence. It provided as follows:

SECOND AMENDED
SENTENCE

AND NOW, this 1st day of November 2019, as to Count 1, resisting Arrest or Other Law Enforcement, the Defendant is sentenced to an alternative sentence as follows:

a.) Defendant shall serve a period of Intermediate Punishment for two (2) years less one (1) day, with a restrictive portion of four (4) months which shall include ninety (90) days incarceration in the Warren County Prison, followed by one (1) month of House Arrest with Electric Monitoring. The balance of the Intermediate Punishment period shall be general supervision by the Warren County Probation Department. This sentence shall run concurrently with the McKean County sentence Defendant is currently serving.

b.) Defendant shall pay the cost of prosecution, an administrative fee of $125 to the Warren County Probation Department, a fine of $350 and central booking costs of $125.

This sentence commences this date.

Pursuant to Local Rule 705, Defendant shall abide by all rules and conditions of Intermediate Punishment.

The presentence investigation report is made part of the record.

BY THE COURT:
s/Maureen A. Skerda, P.J.

Second Amended Judgment of Sentence, 12/12/19, at 1-2.

- 7 -

Indeed, the First and Second Amended Judgments of Sentence retained the November 1, 2019 date of imposition; they amended nothing other than the 119 days of time credit and directed ninety days of incarceration in the county prison followed by electronic home monitoring. If the trial court intended the amended judgments of sentence to vitiate and replace the original November 1, 2019 judgment of sentence, nullify Appellant's timely filed November 12, 2019 post-sentence motion, and alter the time for filing a post-sentence motion and an appeal pursuant to **Garzone**, it failed to provide any notice to Appellant. This Court has held that such failures constitute a breakdown in the operation of the court and excuse the untimely filing of an appeal. **See Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007) (explaining that "courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise Appellant of his post-sentence and appellate rights or misadvised him") (citations omitted); **see also** Pa.R.Crim.P. 704(C)(3) (enumerating, *inter alia*, the sentencing court's responsibility to determine if the defendant has been informed of his post-sentence and appellate rights and of the time within which the defendant must exercise those rights).

Herein, the trial court failed to apprise Appellant that his timely post-sentence motion became moot by the amended judgments of sentence, and that Appellant's post-sentence motion and direct-appeal rights began anew

after the amendments. This constitutes a breakdown in the operation of the court. *Patterson*, 940 A.2d at 498. Thus, even though the appeal properly lies from the amended judgment of sentence entered on December 12, 2019, pursuant to *Garzone*, and Appellant's appeal was filed more than thirty days later following the February 14, 2020 order denying his post-sentence motion, we do not find the appeal untimely. *Patterson*, 940 A.2d at 498. We consider the appeal filed on March 10, 2020, to be a timely appeal from the November 1, 2019 judgment of sentence,[4] as amended on November 19, 2019, and December 12, 2012, respectively. *See Commonwealth v. Watson*, 228 A.3d 928, 933 (Pa. Super. 2020) (considering the merits of an appeal filed on December 13, 2018, from judgment of sentence imposed on

---

[4] As stated, Appellant's March 10, 2020 notice of appeal purported to be from the order denying his post-sentence motion. It is well settled that the order denying post-sentence motions finalizes the judgment of sentence for purposes of appeal. *Commonwealth v. Lewis*, 911 A.2d 558, 561 (Pa. Super. 2006) (citing *Commonwealth v. Dreves*, 839 A.2d 1122, 1125 n. 1 (Pa. Super. 2003) (*en banc*). However, an appellant filing an appeal from the order denying a post-sentence motion instead of the judgment of sentence is an all too common mistake. *See Commonwealth v. Rivera*, 238 A.3d 482, 489 n.1 (Pa. Super. 2020) (stating that the appellant purported to appeal from the order denying his post-sentence motion and noting that "[i]n a criminal action, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions," and correcting the caption and addressing the merits) (quoting *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*)); *see also Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 158 n.1 (Pa. Super. 2007) (same).

November 27, 2018, where the judgment of sentence was subsequently amended to allow the appellant credit for time served).[5]

On appeal, Appellant raises the following issues for our consideration:

[1.] The trial court erred in excluding the testimony of Dr. Joel Burkett, doctor of chiropractic medicine, as a witness for [Appellant] as either an expert or lay witness[.]

[2.] The trial court erred in ruling that the Commonwealth of Pennsylvania, through its agent, the state police, did not violate the standards of **Brady v. Maryland** in failing to disclose that an internal investigation had taken place regarding this matter[.]

[3.] The trial court violated [Appellant's] right to counsel when it failed to permit trial counsel to argue the law of self-defense

[4.] The trial court erred in failing to require that a defense witness from the Pennsylvania State Police attend the trial and testify when a subpoena was received by the state police barricks [sic] via certified mail and refused[.]

_____

[5] The dissent dedicates much of its analysis to explaining that the amended sentences were not clerical. Moreover, it opines that we fail to acknowledge an "exchange" wherein the trial court informed Appellant that it might amend the sentence. Dissenting Opinion, at 2, n.2. Acknowledgment of this exchange is of no moment. There is nothing about the exchange that apprises Appellant of his future post-sentence rights, when they begin to run, when they expire, that they may change, or when an appeal may be filed, if or when an amended sentence is filed. The dissent never addresses the holding in **Patterson**, or Pa.R.Crim.P. 704(C)(3), concerning the trial court's duty to inform an appellant of his post-sentence and appellate rights, and that the failure to do so constitutes a breakdown in the operation of the courts. Indeed, if the amended sentences are, as the dissent finds, a reevaluation of credit for time served, and thus, new sentences requiring separate post-sentence motions, then the trial court had the responsibility to inform Appellant of the time in which he had to file post sentence motions or an appeal after the amendment because the failure to do so is a breakdown in the operation of the court. **Patterson**, 940 A.2d at 498; Pa.R.Crim.P. 704(C)(3).

- 10 -

Appellant's Brief at 1-2 (full capitalization omitted).

In his first issue, Appellant asserts that the trial court erred in precluding the testimony of Joel Burkett, a doctor of chiropractic medicine ("Dr. Burkett"), as either an expert or lay witness. Appellant's Brief at 11. We disagree.

As a general rule, in order to be deemed an expert witness, the witness must possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience. *Commonwealth v. Jennings*, 958 A.2d 536, 539 (Pa. Super. 2008) (citations omitted). The determination regarding whether a witness is qualified to testify as an expert is left to the trial court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Id.* "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Randall*, 758 A.2d 669, 679 (Pa. Super. 2000) (citation omitted).

> In Pennsylvania, a liberal standard for the qualification of an expert prevails. Generally, if a witness has any reasonable pretension to specialized knowledge on the subject matter under investigation he may testify and the weight to be given to his evidence is for the fact finder. It is also well established that an expert may render an opinion based on training and experience; formal education on the subject matter is not necessarily required.

***Commonwealth v. Marinelli***, 810 A.2d 1257, 1267 (Pa. 2002) (internal citations and quotation marks omitted). The relevant evidentiary rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Herein, the witness testified untruthfully about his qualifications and licensure. The record reflects that during direct examination by Appellant's counsel, Dr. Burkett testified that he was a board-certified chiropractor and licensed to practice in Pennsylvania. N.T. (Trial), 9/5/19, at 175-176. However, on cross-examination by the Commonwealth, it was asserted that Dr. Burkett was not licensed. ***Id.*** at 186. The trial court ordered a recess to permit Appellant's counsel and the Commonwealth to contact the State Board of Chiropractic to confirm Dr. Burkett's status. ***Id.*** Following the recess, it was discovered that Dr. Burkett lied about his qualifications, and he had not held a license in nearly three years. ***Id.*** at 188. The trial court agreed with the Commonwealth's argument that Dr. Burkett was not qualified to testify as

an expert because he lied about his credentials and was not licensed. *Id.* at 188-189.

As stated, the standard for qualification as an expert witness is discretionary. *Jennings*, 958 A.2d at 539. Because the witness testified to facts concerning his qualifications that were demonstrably false, we discern no abuse of discretion in the trial court precluding Dr. Burkett from testifying as an expert.

Appellant also contends that even if the trial court correctly precluded Dr. Burkett from testifying as an expert, the court should have allowed Dr. Burkett to provide lay-witness testimony. Appellant's Brief at 13. We may reverse the trial court's ruling regarding the admissibility of lay-witness testimony only upon an abuse of discretion. *Randall*, 758 A.2d at 669. Our Rules of Evidence provide:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

In his brief, Appellant's entire argument relative to Dr. Burkett testifying as a lay witness is as follows:

> In any event, lay or expert, Dr. Burkett should have been permitted to testify. The trial court's failure to permit the witness

to testify at all regarding Mr. Wenzel's preexisting conditions put the defense in a position of having only [Appellant] and his girlfriend speak to [Appellant's] problems. A main issue in this case was whether [Appellant] was even capable of complying with the instructions of the arresting officers, and the ability of an unrelated witness, even one introduced as a lay, rather than an expert witness, **who had a background in chiropractic care**, would have bolstered the defense's arguments in this regard.

Appellant's Brief at 13 (emphasis added).

Because Appellant sought Dr. Burkett's "lay" testimony due to Dr. Burkett's background in chiropractic care, we agree with the trial court that such testimony would not have been proper pursuant to Pa.R.E. 701. Indeed, the trial court concluded: "[A]ny testimony about the Appellant's physical condition would have inherently been based on specialized knowledge." Trial Court Opinion, 5/1/20, at 4 (citing Pa.R.E. 701(c)). Accordingly, we discern no abuse of discretion in the trial court precluding Dr. Burkett's testimony, and we conclude that Appellant's claim of error is meritless.[6]

Appellant's second claim of error asserts that the Commonwealth committed a **Brady**[7] violation when it failed to provide Appellant with documents from an investigation conducted by the Pennsylvania State Police

---

[6] Moreover, the trial court reiterated that Dr. Burkett lied on the witness stand. Trial Court Opinion, 5/1/20, at 4.

[7] **See Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding that the prosecution must disclose evidence favorable to the accused that is material either to guilt or punishment).

- 14 -

Internal Affairs Division ("IAD"). Appellant's Brief at 14. This IAD report allegedly contained information that police officers in this matter were aware that Appellant had physical limitations when they arrested Appellant. *Id.* at 14-15. Appellant contends that if the Commonwealth had disclosed the IAD report, it would "have caused a major shift in the defense's argument at trial." *Id.* at 15.

Our Supreme Court has held that in order to establish a *Brady* violation, the defendant must prove:

> (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012) (internal citations, quotation marks, brackets, and emphasis omitted).

Herein, the trial court concluded that there was no evidence the Commonwealth suppressed the IAD report because the Commonwealth was not aware of the IAD investigation until after trial. Trial Court Opinion, 5/1/20, 7. The trial court opined: "The District Attorney's office was not aware that an IAD report had been completed until December 6, 2019. Once [the District

Attorney's office] became aware of the report, [it] promptly provided it to defense counsel." ***Id.***; N.T. (Hearing), 2/6/20, at 32. Because there is no evidence that the Commonwealth either willfully or inadvertently suppressed the IAD report, Appellant has failed to establish a ***Brady*** violation. ***Willis***, 46 A.3d at 656.

Additionally, even if the Commonwealth committed a ***Brady*** violation and failed to disclose the IAD report, any error was harmless. As noted, Appellant asserts that if he had the IAD report, his defense would have been different. Appellant's Brief at 15. Appellant argues that the IAD report could have been used to impeach a key witness as follows:

> [I]t would have most certainly used the report to show that Corporal Bovee, at least, knew about [Appellant's] fragile condition prior to the arrest. This would have caused a major shift in [Appellant's] argument at trial. The report showed that Corporal Bovee was removed from the case and an officer who was not present for the arrest, Corporal Wagner, was assigned the task of writing the General Offense Report. Corporal Bovee wrote no additional supplemental report, even thought she was the primary decision maker that led to the entire incident.

***Id.*** at 15-16.

In disposing of Appellant's claim, the trial court opined:

> At the time of the evidentiary hearing, the District Attorney stipulated that a *Brady* violation may have occurred in that a report existed that may have contained exculpatory evidence. This [c]ourt, however, is convinced that the Commonwealth's failure to provide defense counsel with the IAD report constituted harmless error and furthermore, that because the District Attorney's office was unaware that the investigation had taken place until after the trial, and disclosed the information upon receipt of the report. The Appellant alleges that the IAD report could have been used to show that Corporal Bovee was aware that

- 16 -

the Appellant had a broken neck at the time of arrest. This argument is unconvincing for three reasons. First, the Commonwealth stipulated during trial that the Appellant had a broken neck at the time of arrest. Second, the facts contained in the IAD report do not address the central issue of the defense's argument, that the Appellant's use of force in resisting arrest was justified as self-defense. Finally, the information in the IAD report that Corporal Bovee was aware of the Appellant's broken neck was harmless error because Corporal Bovee did not testify at trial. Therefore, the IAD report could not have been used to contradict her testimony.

Trial Court Opinion, 5/1/20, 6-7. We agree with the trial court. Even if we concluded the Commonwealth committed a *Brady* violation, which we do not, any error was harmless, and Appellant would be entitled to no relief.

In his next issue, Appellant contends the trial court erred in refusing to instruct the jury on self-defense and precluding Appellant's counsel from arguing self-defense in its summation to the jury. Appellant's Brief at 17-18. We conclude that this issue is meritless.

Our Court has stated:

Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge. Such claim may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination.

*Commonwealth v. Hansley*, 24 A.3d 410, 420-421 (Pa. Super. 2011) (citation and emphasis omitted). In its opinion, the trial court addressed this issue as follows:

The Appellant next alleges that this [c]ourt improperly refused to provide a self-defense instruction to the jury. He avers

- 17 -

that such an instruction may have influenced the jury's verdict. Jury charges on self-defense must be given upon request, where a jury would have possible basis for finding self-defense. If there is evidence presented that could support a claim of self-defense, it is up to the fact finder to pass upon its credibility. But before self-defense may be at issue, there must be some evidence, from whatever source, to justify a finding of self-defense. *Com. v. Bailey*, 471 A.2d 551 (Pa. Super. Ct. 1984). Under 18 Pa.C.S.A. § 505 (b), self-defense cannot be used to justify the use of force if it is

(1) To resist an arrest and

(2) The arrest is being made by someone who the actor knows is a peace officer

Under this statute, an unlawful arrest does not excuse an assault upon an arresting police officer. *Com. v. McKeirnan*, 487 A.2d 7 (Pa. Super. Ct. 1985); *Com. v. Meoli*, 452 A.2d 1032 (Pa. Super. Ct. 1982). Only if the police officer unlawfully uses or threatens deadly force, may the actor rightfully claim self-defense. The Appellant in this case used force to resist arrest, knowing that the arrest was being made by police officers. Furthermore, the Appellant has never alleged that he feared for his life during the course of the arrest. Therefore, it was proper for the [c]ourt to refuse a self-defense instruction.

The Appellant also alleges that his Sixth Amendment rights were violated when the Court did not allow him to argue the law of self-defense in his closing argument. As shown above, the defense did not provide evidence that the Appellant's use of force constituted self-defense under 18 Pa.C.S.A. § 505 (b). In addition, the record does not support the Appellant's allegation that counsel was forbidden from arguing the law of self-defense during closing arguments.

Trial Court Opinion, 5/1/20, at 7-8.

After review, we agree with the trial court's rationale. It is undisputed

that Appellant was aware that the arresting officers were "peace officers"

effectuating an arrest. Even if Appellant believed that the arrest was unlawful,

- 18 -

it did not justify Appellant's use of force. 18 Pa.C.S. § 505(b)(1)(i). Thus, there was no basis upon which to instruct the jury on self-defense.

Additionally, the record belies Appellant's claim that he was precluded from arguing self-defense to the jury. In his brief, Appellant contends that the following exchange reflects that the trial court prevented him from arguing self-defense:

> In fact, the trial court cut off trial counsel during his closing argument when he mentioned reasonable doubt and then again when he asked for a clarification of the court's ruling and whether he could at least discuss the elements of self-defense in his summation to the jury. Specifically, during the defense's closing, the following discussion took place:
>
> [Appellant's Counsel]: ...in order to find the Defendant guilty of this charge, you must find that the Commonwealth has proven beyond a reasonable doubt-
>
> THE COURT: [Counsel], I will instruct the jury in the law, and I've made that clear.
>
> [Appellant's Counsel]: Can I go through the elements, Your Honor?
>
> THE COURT: I will instruct the jury in the law. Continue. (T.T. at 244).

Appellant's Brief at 18. We fail to see how this exchange prohibited Appellant from arguing self-defense in the closing argument. Rather, the trial court merely clarified that the court, not Appellant's counsel, would instruct the jury on the law. We conclude that Appellant's claim of error is without merit.

In his final issue, Appellant avers that the trial court erred when it did not compel Pennsylvania State Police Corporal Bovee to attend the trial and

testify despite Appellant mailing Corporal Bovee a subpoena. Appellant's Brief at 19-20. Appellant maintains that he served Corporal Bovee a subpoena *via* certified mail, return receipt requested, but the subpoena was returned to counsel and marked "unclaimed" by the United States Postal Service. Appellant's Brief at 20. We conclude that no relief is due.

"[A] subpoena may be served upon a witness in a criminal proceeding by registered or certified mail, return receipt requested, or by first class mail." 42 Pa.C.S. § 5904(a). Moreover, "[a]completed return receipt shall be prima facie evidence of service of the subpoena." *Id.* at § 5904(b). In the instant case, the trial court found that Appellant had failed to produce proof of service. Trial Court Opinion, 5/1/20, at 8. The trial court concluded: "The subpoena letter was returned unopened, which means service was not accepted. Pursuant to 42 Pa.C.S. § 5904(b), no service was made." *Id.*

In *Hando v. Commonwealth*, 478 A.2d 932 (Pa. Cmwlth. 1984),[8] a case with a similar factual scenario, the appellant argued that that the trial court committed reversible error when it failed to make further inquiries regarding a subpoena allegedly issued by the appellant and not accepted by the police department. *Id.* at 935. The Commonwealth Court found no error in the trial court's refusal to investigate issues surrounding the police

---

[8] Although the decisions of the Commonwealth Court are not binding on this Court, we may look to them for their persuasive value. *Commonwealth v. Brown*, 240 A.3d 970, 973 n.3 (Pa. Super. 2020) (citation omitted).

department's purported refusal to accept a subpoena because the appellant failed to present the trial court with proof of service. *Id.* The Commonwealth Court explained:

> [The] appellant did not present the common pleas judge with a proof of service required by Section 5904(d) of the Judicial Code, 42 Pa.C.S. § 5904(d), to obtain a bench warrant to secure the presence of the absent witness. Under Section 5904(d) it is the obligation of the party seeking enforcement of a subpoena to produce proof of the subpoena's service to the court and request a bench warrant, the court is not required to elicit that information when a party fails to request a bench warrant. Appellant also failed to request a continuance … when the subpoenaed witness failed to appear and to request enforcement of the allegedly ignored subpoena. As appellant failed to avail himself of … 42 Pa.C.S. § 5904(d) or [request a continuance], we find no error in the common pleas judge proceeding with the [proceedings].

*Id.* at 935-936 (internal footnotes omitted).

Herein, it is undisputed that Appellant failed to produce proof of service. N.T. (Trial), 9/5/19, at 189-191. This issue was raised before the trial court immediately after the trial court refused to qualify Dr. Burkett as an expert. *Id.* at 189. The trial court denied Appellant's request for a continuance with respect to the disqualification of Dr. Burkett. *Id.* at 190. The trial court next concluded that Appellant failed to produce proof of service relative to Corporal Bovee and explained that without proof of service, it could not order Corporal Bovee to testify. *Id.* at 191. Appellant did not request a continuance on this issue and made no further argument.

We are persuaded by the reasoning in **Hando**. Because Appellant failed to produce proof of service, there was no error in the trial court's refusal to compel Corporal Bovee's presence or testimony. **Hando**, 478 A.2d at 936.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge King joins the Opinion.

Judge Stabile files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  03/17/2021